| | | |
|---|---|---|
| **MARY DOE SD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:07CV362MLM** |
| | ) | |
| **THE SALVATION ARMY,** | ) | |
| a Non-Profit Corporation, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This matter is before the court pursuant to the Motion to Dismiss filed by Defendant The Salvation Army ("Defendant"). Doc. 19. Plaintiff Mary Doe SD ("Plaintiff") filed a Response. Doc. 22. Defendant filed a Reply. Doc. 28. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). Doc. 8.

## BACKGROUND

Plaintiff alleges that she is presently an adult female; that during the summer of 1993 or 1994, when Plaintiff was 13 or 14 years old, she participated in Defendant's summer day camp for children as a volunteer counselor; that during this time Plaintiff was supervised and provided spiritual guidance by Captain Edward Mitchell; that during this time Captain Mitchell sexually abused Plaintiff; that Defendant was aware of previous sexual misconduct with minors in which clergy and Corps Officers, including Captain Mitchell, engaged; and that Defendant was aware of Captain Mitchell's treatment of Plaintiff and the fact that she was sexually abused by another of Defendant's employees. Doc. 15, Amend. Compl. ¶ ¶ 7-9.

Plaintiff further alleges in the Amended Complaint that Captain Mitchell learned of and

confronted Plaintiff about her relationship with and sexual abuse by Defendant's camp supervisor; that Plaintiff acknowledged that the camp supervisor had kissed her and also informed Captain Mitchell that they were "seeing" each other; that despite having this information, Defendant conducted no investigation; that Captain Mitchell blamed Plaintiff for the sexual conduct and prohibited her from continuing to attend Defendant's Temple church and its summer camp; and that Captain Mitchell took advantage of the situation by abusing Plaintiff himself. Amend. Compl. ¶ 10.

Plaintiff's Amended Complaint includes the following allegations: Count I, child sexual abuse; Count II, negligence; Count III, intentional infliction of emotional distress; Count IV, intentional failure to supervise clergy; and Count V, breach of fiduciary duty.[1]

## LEGAL STANDARD FOR A MOTION TO DISMISS

Fed. R. Civ. P. 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted." To survive a motion to dismiss a complaint must show "'that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Further, in regard to a Rule 12(b)(6) motion, the Supreme Court holds:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [citations omitted] a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure §

---

[1]     In its Motion to Dismiss Defendant incorrectly states that Count IV alleges breach of fiduciary duty.

1216, pp. 235-236 (3d ed.2004) ... see, e.g., ... <u>Neitzke v. Williams</u>, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

<u>Id.</u> at 1964-65.

Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable" <u>Id.</u> at 1965 (citation omitted). "The issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [its] claim." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).

## DISCUSSION

**A.      Count I, Child Sexual Abuse:**

 Defendant contends that Plaintiff has failed, in Count I, to sufficiently plead child sexual abuse based on a theory of respondeat superior. [2]  In particular Defendant contends that Plaintiff has failed to plead ratification and vicarious liability in support of her theory of respondeat superior.  Doc. 22 at 9-11.

Plaintiff alleges in regard to Count I [3] that in 1993 or 1994 Captain Mitchell engaged in unpermitted, harmful, and offensive sexual conduct and contact with Plaintiff, a minor.  Plaintiff alleges that Defendant is liable for child sexual abuse as alleged in Count I because these acts  were

---

[2]      The court notes that Plaintiff does not specifically allege respondeat superior although she alleges vicarious liability and ratification in support of the child sexual abuse claim of Count I.

[3]      Plaintiff incorporates by reference all preceding paragraphs in each count of the Amended Complaint.

committed in the course and scope of Captain Mitchell's employment with Defendant and/or were ratified by Defendant; because by giving Captain Mitchell control over children, Defendant consented to or knowingly permitted him to exercise authority on behalf of Defendant; because at all times material Captain Mitchell was under the direct supervision and control of Defendant; because Captain Mitchell's conduct, as alleged, was undertaken while in the course and scope of his employment with Defendant; because Captain Mitchell's conduct, as alleged, was undertaken while he was a managing agent of Defendant; because Plaintiff trusted Captain Mitchell due to his position and due to his being under the direct supervision, employ and control of Defendant; because using this trust Captain Mitchell sought and gained access to Plaintiff which could not have been gained unless Captain Mitchell was under the supervision of Defendant; because at all times material Captain Mitchell was required to comply with Defendant's instructions regarding where and how to work; because at all times material Defendant had control over how Captain Mitchell's work results were achieved; because Defendant provided training to Captain Mitchell on how to perform specific functions of his job; because Captain Mitchell performed much of his work on premises owned by Defendant; because Defendant paid Captain Mitchell for his work, paid his travel expenses, and furnished Captain Mitchell with tools and materials; and because Captain Mitchell's conduct was ratified by Defendant. Plaintiff also alleges that Defendant is vicariously liable for the acts and omissions of Captain Mitchell. Amend. Compl. ¶¶ 13-20. Plaintiff does not name Captain Mitchell as a defendant; rather, she only names Defendant, The Salvation Army.

## 1.    Respondeat Superior:

A claim that an individual was acting within the course and scope of his employment when he committed the acts alleged comes within the purview of the doctrine of respondeat superior.

<u>Studebaker v. Nettie's Flower Garden, Inc.</u>, 842 S.W.2d 227, 229 (Mo. Ct. App. 1992) (citing <u>Light v. Lang</u>, 539 S.W.2d 795, 799 (Mo. Ct. App.1976)).  This principle is applicable when it is claimed that a principal is liable for the conduct of its agents.  <u>Id.</u>  The requirements for application of respondeat superior are as follows:

> The test to determine if respondeat superior applies to a tort is whether the person sought to be charged as master had the right or power to control and direct the physical conduct of the other in the performance of the act. <u>Id.</u> If there was no right to control there is no liability; for those rendering services but retaining control over their own movements are not servants. <u>Id.</u> The master-servant relationship arises when the person charged as master has the right to direct the method by which the master's service is performed. <u>Id.</u> An additional inquiry is whether the person sought to be charged as the servant was engaged in the prosecution of his master's business and not simply whether the accident occurred during the time of employment. <u>Gardner v. Simmons</u>, 370 S.W.2d 359, 364 (Mo.1963). *Whether a party is liable under the doctrine of respondeat superior depends on the facts and circumstances in evidence in each particular case and no single test is conclusive of the issue of the party's interest in the activity and his right of control*. <u>Sharp v. W. & W. Trucking Co.</u>, 421 S.W.2d 213, 220 (Mo. banc 1967).

<u>Id.</u> (emphasis added).

In support of its position that Plaintiff has not stated a cause of action in Count I for child sexual abuse Defendant cites <u>Gibson v. Brewer</u>, 952 S.W.2d 239, 245-46 (Mo. 1997), in which the Missouri Supreme Court held that the plaintiff failed to plead facts sufficient to establish that alleged sexual abuse by a priest was within the scope of his employment. First, the court notes that the court's holding in <u>Gibson</u> was based on the facts of that case; the plaintiff in <u>Gibson</u> was invited by priests employed by the defendant to watch movies in a church rectory; inviting children to watch movies in a church rectory is not necessarily within the course and scope of a priest's employment. Plaintiff in the matter under consideration specifically alleges the conduct of which she complains occurred during the course and scope of Captain Mitchell's employment with Defendant; Captain

Mitchell, pursuant to his position with Defendant, allegedly approached Plaintiff, who was a counselor at Defendant's camp, to inquire about her relationship with the camp supervisor.

Second, the Eighth Circuit holds that under Missouri law "a servant may act within the scope of his employment even though pursuing his own ends, if he is at the same time doing his master's business." Doe v. B.P.S. Guard Servs., Inc., 945 F.2d 1422, 1425 (8th Cir. 1991). "In fact the servant's predominant motive may be to benefit himself ... but there can be respondeat superior as long as 'the master's business actuates the servant to any appreciable extent.'" Id. (citing Restatement of Agency Second, § 236). In the matter under consideration while engaging in the conduct of which Plaintiff complains Captain Mitchell was involved in the ordinary and authorized duties of his position as Defendant's lead minister and supervisor. Even if he was pursuing his own ends while engaging in the conduct of which Plaintiff complains, Captain Mitchell was doing so in the course of his employment. According to the allegations of Plaintiff's Complaint, Captain Mitchell only gained access to Plaintiff as a result of his employment by and position with Defendant. Further, when Captain Mitchell allegedly inquired of Plaintiff regarding her relationship with the camp supervisor he was unequivocally acting within the scope of his employment. Under such circumstances respondeat superior may apply. Id. Moreover, whether or not an individual is acting within the course of his employment "depends upon the facts and circumstances of each particular case and no single test is conclusive." Noah v. Ziehl, 759 S.W.2d 905, 909-10 (Mo. Ct. App. 1988). See also Fuqua v. Lumberman's Supply Co., 76 S.W.2d 715, 721 (Mo. 1934) ("'Whether the servant has departed from the scope of his employment would depend upon the degree of deviation, and all the attending circumstances.' ... Where the degree of deviation is marked and unusual, ..., the court, as a matter of law, would declare that he has departed from the scope of his employment.") (citation

omitted).

Because Plaintiff alleges all of the elements of respondeat superior including that Defendant had the power and right to control the way Captain Mitchell performed his job and that Captain Mitchell was engaged in the prosecution of Defendant's enterprise or business when he engaged in the conduct alleged the court finds that Plaintiff has sufficiently alleged all of the elements of respondeat superior to support her claim of liability on the part of Defendant in Count I for child sexual abuse. See Studebaker, 842 S.W.2d at 229.

## 2. Ratification:

In addition to alleging in Count I that Defendant is liable based on respondeat superior Plaintiff alleges in paragraph 18 of Count I that Defendant ratified Captain Mitchell's conduct. The theory of ratification, however, which is recognized under Missouri law, is "confirmation *after* conduct. Springfield Land and Dev. Co. v. Bass, 48 S.W.3d 620, 627 (Mo. Ct. App. 2001) (emphasis added). See also Murphy v. Jackson Nat. Life Ins. Co., 83 S.W.3d 663, 668 (Mo. Ct. App. 2002). A theory of ratification is premised on an actor's engaging in conduct without authority and thus, it is "a substitute for prior authority." Id. A theory of ratification, therefore, is inconsistent with a theory of respondeat superior as respondeat superior is based the actor's having the defendant's authority at the time he engaged in the conduct of which the plaintiff complains. Id. As such, the court will assume, that Plaintiff intends to allege ratification in the alternative.

The court in Springfield Land further explained as follows in regard to ratification:

This Court has written: "[a]s relates to agency, 'ratification' is an express or implied adoption or confirmation, with *knowledge of all material matters*, by one person of an act performed on his behalf by another who at that time assumed to act as his agent but lacked authority to do so." Wilks v. Stone, 339 S.W.2d 590, 595 (Mo.App.1960) (emphasis added); Unlimited Equip. Lines, 889 S.W.2d at 936;

American Multi-Cinema, Inc. v. Talayna's N.W., Inc., 848 S.W.2d 557, 559 (Mo.App.1993). ... "The existence of agency and the authority of the agent can be and often is implied by proof of facts, circumstances, words, acts, and conduct of the party to be charged." Wilks, 339 S.W.2d at 595. "Probably the most certain evidence of implied ratification is the *acceptance and retention of the fruits of the contract* with full knowledge of the material facts of the transaction." American Multi-Cinema, 848 S.W.2d at 560 (quoting Wilks, 339 S.W.2d at 596).

(emphasis added).

While "knowledge is an essential element of ratification," it "need not be intentional." Murphy, 83 S.W.3d at 668 (citing Clear v. Missouri Coordinating Bd. for Higher Educ., 23 S.W.3d 896, 901 (Mo. Ct. App. 2000)). In regard to the knowledge element of ratification "it is essential 'that the principal have full knowledge of all the material facts at the time he is charged with having accepted the transaction as his own.'" Id. (quoting Molasky Enters., Inc. v. Carps, Inc., 615 S.W.2d 83, 89 (Mo. Ct. App. 1981)).

In the matter under consideration Plaintiff alleges that Captain Mitchell, who was the lead minister, confronted Plaintiff about her relationship with and sexual abuse by one of Defendant's camp supervisors; that *Plaintiff informed him that it was true that the camp supervisor had kissed her* and that they were "seeing" each other; and that after receiving this information from Plaintiff, Defendant conducted no investigation of the matter, blamed Plaintiff for the sexual conduct, and prohibited her from continuing to attend Defendant's Temple and its summer camp. Plaintiff has also alleged that Captain Mitchell was under the *direct supervision* and *control* of Defendant; that Defendant had the *right to control* the manner in which Captain Mitchell performed his job; that Captain Mitchell performed his job on premises owned by Defendant; and that Captain Mitchell's conduct for which Plaintiff seeks redress was *undertaken in the course and scope* of Captain Mitchell's employment with Defendant. Plaintiff has, therefore, alleged that Defendant confirmed

the conduct of which she complains *after* this conduct occurred and that it had full knowledge of all the material facts. See Murphy, 83 S.W.3d at 668; Springfield Land, 48 S.W.3d at 627-27; Clear, 23 S.W.3d at 901. As such, the court finds that to the extent Defendant asserts that Plaintiff's alternative allegation of ratification in Count I should be dismissed, Defendant's Motion to Dismiss should be denied.

**B.      Count II, Negligence:**

In Count II Plaintiff alleges negligence including negligent supervision of clergy. Defendant challenges Count II on two grounds: first, it is barred by the First Amendment; second, there is no such cause of action as negligent supervision of clergy in Missouri. In regard to Defendant's First Amendment argument, Defendant contends that this claim is barred by the Free Exercise Clause of the First Amendment which provision prohibits interference in the internal management of religious organizations and by the Establishment Clause which bars actions tending to foster excessive government entanglement with religion. [4]

In Count II Plaintiff specifically alleges that Defendant had a duty to protect children who attended its church and camp; that Defendant breached this duty when it failed to protect Plaintiff from the conduct of which she complains; that Defendant negligently retained and/or failed to supervise Captain Mitchell; that as a result Captain Mitchell was able to commit the conduct of which Plaintiff complains; that Defendant failed to use reasonable care in investigating; that Defendant failed

---

[4]      Plaintiff suggests in her brief that she alleges negligent supervision of children in Count II. Doc. 22 at 10-11. This court's reading of Count II does not suggest such an allegation. Rather, ¶ 22 states that Defendant had a duty to protect children and ¶ 23 alleges that Defendant had a duty to "protect" Plaintiff and that Defendant negligently retained and failed to provide reasonable supervision of Captain Mitchell. Defendant's Motion to Dismiss does not address negligent supervision of children but addresses negligent supervision of clergy in terms of its First Amendment argument.

to provide adequate warning to Plaintiff and her family regarding Captain Mitchell's dangerous propensities; and that as a result Plaintiff has suffered injury and damages.

1.    **The First Amendment - The Free Exercise Clause:**

Defendant argues that courts are barred by the First Amendment from becoming involved in "purely ecclesiastical matters, including but not limited to, the hiring, firing, and retention of clergy." Doc. 19 at 7.  While this is an accurate statement of the provisions of the First Amendment, religious entities remain subject to generally applicable, neutral employment law.  See Employment Div. Dep't of Human Res. of Oregon v. Smith, 494 U.S. 872, 878 (1990) ("[T]he right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).");  Smith v. O'Connell, 986 F. Supp. 73, 76 (D.R.I. 1997) ("It is well established that the First Amendment prohibits secular courts from intervening in the internal affairs of hierarchical churches by deciding what, essentially, are religious matters.") (citing Serbian E. Orthodox Diocese for the United States and Canada v. Milivojevich, 426 U.S. 696, 708-10 (1976); Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church, 393 U.S. 440, 449 (1969)).   For the Free Exercise Clause to be implicated a defendant must show that there is a conflict between the conduct that is required by law and that which is prescribed or prohibited by a religious principle. Smith, 986 F. Supp. at 78-80.  See also E.E.O.C. v. Sw. Baptist Theological Seminary, 651 F.2d 277, 286 (5th Cir. 1981) ("[S]ince the Seminary does not hold any religious tenant that requires discrimination of the basis of sex, ... , the application of Title VII reporting requirements to it does not directly burden the exercise of any sincerely held religious belief.").   Certainly, in the matter under consideration Defendant does not contend that protecting children from a child abuser,

investigating child abusers, or supervising employees violate any doctrine or practice of the Salvation Army. As such, the court finds that the First Amendment is not implicated.

Even if Plaintiff's cause of action would impose a burden on some religious conduct or practice of the Salvation Army, "an individual's religious beliefs [do not] excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." Smith, 494 U.S. at 879. Thus, as stated above, "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability.'" Id. The court finds, therefore, that Plaintiff's claim for negligence is not barred by the Free Exercise Clause of the First Amendment and that Defendant's Motion to Dismiss should be denied in this regard.[5]

## 2.    The First Amendment - The Establishment Clause:

In regard to Defendant's claim that Plaintiff's claim for negligence duty is barred by the Establishment Clause, the Supreme Court has articulated a three part test to determine whether the Establishment Clause is implicated. An action does not violate the Establishment Clause if the action:

---

[5]    Defendant cites Gibson v. Brewer, 952 S.W.2d 239 (Mo. 1997), in support of its position that the Free Exercise Clause bars Plaintiff's claims. First, upon considering matters of federal law, such as application of the First Amendment, this court follows precedent of the United States Supreme Court. See Kampa v. White Consol. Indus., Inc., 115 F.3d 585, 587 (8th Cir. 1997). Second, the court in Gibson failed to consider whether a sincerely held religious belief was being infringed. Third, the court in Gibson relied on the doctrine of judicial abstention. The Supreme Court has limited this doctrine, however, to bar actions which involve judicial review of purely ecclesiastical matters such as the resolution of doctrinal issues, religious controversy, and disputes between factions of a church that have agreed to be governed by church law. Jones v. Wolf, 443 U.S. 595, 604 (1979). The doctrine of judicial abstention, therefore, has no place in the matter under consideration. See also Gen. Council on Finance and Admin. of the United Methodist Church, 439 U.S. 1369, 1370 (1978) (holding that where the dispute is secular, and not ecclesiastical, the abstention doctrine does not apply). Fourth, even the court in Gibson, 952 S.W.2d at 246, held that "[r]eligious organizations are not immune from civil liability for the acts of their clergy"; they may be held liable where "religious doctrine, polity, and practice" are not at issue such as where negligent operation of a vehicle by a pastor in the scope of his employment is alleged.

11

(1) has a secular purpose; (2) has a "primary effect which neither advances nor inhibits religion"; and (3) does not "foster 'an excessive government entanglement with religion.'" Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971) (citations omitted).[6]

In the matter under consideration, the purpose of the law which Plaintiff is seeking to enforce is secular in nature. Moreover, Plaintiff's cause of action neither advances nor inhibits religion as Plaintiff seeks to apply principles of common law and Missouri tort law to church employees in a manner which conforms with "neutral principles of law." As noted by Plaintiff, no ongoing monitoring of Defendant is required by the matter under consideration. Rather, this matter involves a single claim

---

[6]     In Lemon, 403 U.S. at 612, the Supreme Court expressed concern over entanglement by states with First Amendment rights by adopting programs which would give financial support to non-public schools by way of reimbursement for the cost of teacher's salaries, textbooks, and instructional materials in specified secular subjects. The court addressed the content of the Establishment Clause as follows:

> The language of the Religion Clauses of the First Amendment is at best opaque, particularly when compared with other portions of the Amendment. Its authors did not simply prohibit the establishment of a state church or a state religion, an area history shows they regarded as very important and fraught with great dangers. Instead they commanded that there should be 'no law respecting an establishment of religion.' A law may be one 'respecting' the forbidden objective while falling short of its total realization. A law 'respecting' the proscribed result, that is, the establishment of religion, is not always easily identifiable as one violative of the Clause. A given law might not establish a state religion but nevertheless be one 'respecting' that end in the sense of being a step that could lead to such establishment and hence offend the First Amendment.

> In the absence of precisely stated constitutional prohibitions, we must draw lines with reference to the three main evils against which the Establishment Clause was intended to afford protection: 'sponsorship, financial support, and active involvement of the sovereign in religious activity.' Walz v. Tax Commission, 397 U.S. 664, 668, 90 S.Ct. 1409, 1411, 25 L.Ed.2d 697 (1970).

Id. at 612.

by a single Plaintiff regarding the application of generally applicable neutral principles of law. <u>See</u> e.g., <u>NLRB v. Hanna Boys Center</u>, 940 F.2d 1295, 1204 (9th Cir. 1991) (holding that the NLRB's exercise of jurisdiction did not violate the Establishment or Free Exercise Clauses; it "will not involve monitoring the religious aspects of [the defendant's] activities at all."). As such, Defendant has not demonstrated that Plaintiff's cause of action involves "excessive entanglement" with religion. <u>See</u> <u>id.</u> The court finds, therefore, that Defendant's Motion to Dismiss should be denied to the extent it asserts that Count II of Plaintiff's Amended Complaint should be dismissed because it is barred by the Establishment Clause of the First Amendment.

        3.        **Negligent Supervision:**

Defendant claims that a cause of action for negligent supervision of clergy does not exist in Missouri. The court in <u>Davis v. Lutheran South High School Association of St. Louis</u>, 200 S.W.3d 163, 165-66 (Mo. Ct. App. 2006), however, acknowledged such a cause of action under Missouri law and held that its elements are as follows:

> To successfully prove the tort of negligent supervision, a plaintiff must plead and prove the following: (1) a legal duty on the part of the defendant to use ordinary care to protect the plaintiff against unreasonable risks of harm; (2) a breach of that duty; (3) a proximate cause between the breach and the resulting injury; and (4) actual damages to the plaintiff's person or property. <u>Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc.</u>, 700 S.W.2d 426, 431 (Mo. banc 1985). "An often misunderstood aspect of the doctrine of negligent supervision and which when ignored often leads to confusing analysis is that the 'duty to supervise runs not to an activity, but rather to an individual.' " <u>O.L. v. R.L.</u>, 62 S.W.3d 469, 474 (Mo. App. W.D.2001) (quoting <u>Bequette v. Buff</u>, 862 S.W.2d 921, 924 (Mo. App. E.D.1993)).

The court finds that a cause of action for negligent supervision does exist in Missouri; that Plaintiff has sufficiently alleged the elements of such a cause of action and given Defendant fair notice of the grounds upon which this claim rests; and that Defendant's Motion to Dismiss should be denied

in this regard. See Bell Atlantic, 127 S.Ct. at 1964; Davis, 200 S.W.3d at 165-66.

**C.    Count III, Intentional Infliction of Emotional Distress:**

Defendant alleges that Plaintiff's claim for intentional infliction of emotional distress as alleged in Count III should be dismissed as Plaintiff has failed to sufficiently plead the elements necessary to state such a cause of action.  In particular, Defendant alleges that Plaintiff cannot demonstrate the necessary element that Captain Mitchell's actions were initiated with the sole intent of causing her emotional harm.  Doc. 19, Mem. at 12 (citing K.G. v. R.T.R., 918 S.W.2d 795, 799-800 (Mo. 1996) (en banc).  Further, Defendant alleges that Plaintiff's cause of action for intentional infliction of emotional distress must fail because this allegation is wholly dependent on her underlying sexual assault allegation.  Doc. 19, Mem. at 12.

As stated above, Plaintiff alleges that it was Captain Mitchell who confronted Plaintiff about her relationship with Defendant's camp supervisor; that Plaintiff stated it was true that the camp supervisor had kissed her and that she and the camp supervisor were "seeing" each other; that rather than conduct an investigation Captain Mitchell blamed Plaintiff for the sexual conduct, prohibited her from attending Defendant's Temple church and summer camp, and took advantage of the situation by sexually abusing Plaintiff himself.  Plaintiff further alleges that Defendant knew or reasonably should have known of Captain Mitchell's conduct in this regard.  Specifically, in regard to her allegation of intentional infliction of emotional distress in Count III, Plaintiff alleges that Captain Mitchell held himself out to Plaintiff as a church leader, teacher, guide, and surrogate father figure; that his kindness juxtaposed against his conduct of sexual abuse of, blaming, and failure to protect Plaintiff created a psychological and emotional conundrum for Plaintiff who was a young girl; that as a result she developed psychological dysfunction; that Captain Mitchell's *conduct was undertaken*

*intentionally to cause such emotional distress* to Plaintiff; that Captain Mitchell's *conduct was*

*unconscionable, outrageous, and beyond all reasonable decency*; that Plaintiff's *emotional distress*

*is medically diagnosable* and of sufficient severity as to be medically significant; and that Plaintiff has

suffered, among other things, *pain of the mind and body*, emotional distress, the *physical*

*manifestations of emotional distress*, as a result. Amend. Compl. ¶ ¶ 26-33.

Missouri recognizes a cause of action for intentional infliction of emotional distress. See e.g.,

K.G., 918 S.W.2d at 799-800; Nazeri v. Missouri Valley College, 860 S.W.2d 303, 316 (Mo. banc

1993). The court in K.G., 918 S.W.2d at 799, set forth the elements of this tort as follows:

> "In order to state an emotional distress claim, the plaintiff must plead extreme and
> outrageous conduct by a defendant who intentionally or recklessly causes severe
> emotional distress that results in bodily harm." Nazeri v. Missouri Valley College, 860
> S.W.2d 303, 316 (Mo. banc 1993); see also Restatement (Second) of Torts, § 46.
> Intentionally subjecting a young child to sexual contact is unquestionably extreme and
> outrageous conduct. However, the claim for intentional infliction of emotional harm
> will not lie where the alleged conduct is intended to invade other legally protected
> interests of the plaintiff or intended to cause bodily harm. See Restatement (Second)
> of Torts, § 47. ...
>
> It has been held that where one's conduct amounts to the commission of one
> of the traditional torts, such as battery, and the conduct was not intended only to
> cause extreme emotional distress to the victim, the tort of intentional emotional
> distress will not lie, and recovery must be had under the appropriate traditional
> common law action. "Where the actor's tortious conduct in fact results in the invasion
> of another legally protected interest, as where it inflicts bodily harm ... emotional
> distress, caused either by the resulting invasion or by the conduct may be a matter to
> be taken into account in determining damages." Restatement (Second) of Torts, § 47,
> comment b. ... The rationale behind this rule is that the tort of intentional infliction of
> emotional distress is a relative newcomer to the common law. As such, it was
> intended to supplement existing forms of recovery, not swallow them. [Rigazio v.
> Archdiocese of Louisville, 853 S.W.2d 295, 299 (Ky. App.1993)].

In K.G., where the plaintiff alleged intentional infliction of emotional distress inflicted by

sexual abuse, the court held that the perpetrator's "purpose for committing the offensive touching

was sexual gratification. He invaded [the plaintiff's] legally protected interest of being free from harmful or offensive contact. Contact with the genitals of a child for the purpose of sexual gratification is clearly offensive contact and is a battery. Id. (citing Sheehan v. Sheehan, 901 S.W.2d 57, 58 MO. 1995); J.D. v. M.F., 758 S.W.2d 177, 178 (Mo. Ct. App.1988)). The court held, however, that "recovery for emotional distress caused by battery may be allowable as an element of damages in a battery action." Id. at 800. Nonetheless, "there is no independent action for intentional infliction of emotional distress where the existence of the claim is dependent upon a battery." Id. "Many battery actions, particularly those involving sexual contact, involve an offensive touching that is extreme and outrageous and may result in emotional distress. Nevertheless, such actions are at their core an action for battery." Id.

In the matter under consideration, however, Plaintiff does not merely allege that Captain Mitchell sexually abused her; she alleges that upon her informing him that the camp supervisor and Plaintiff were engaging in inappropriate sexual activity, Captain Mitchell's response was not only to abuse Plaintiff but to blame her for the abuse and to prohibit her from attending Defendant's church and camp. Thus, Plaintiff alleges that Captain Mitchell blamed Plaintiff for her relationship with the camp supervisor and forced her to leave the church *not for sexual gratification but rather for the purpose of inflicting emotional distress* upon Plaintiff. In the context of Plaintiff's factual allegations, therefore, Captain Mitchell's conduct of *intentionally inflicting emotional distress* upon her as alleged in Count III is *independent of the act of sexual abuse*. Further, Plaintiff has alleged Captain Mitchell's *conduct was extreme and outrageous*; that he *intentionally caused severe emotional distress* to her; and that this conduct and her severe emotional distress *resulted in bodily and psychological harm* to Plaintiff. As such, the court finds that Plaintiff has sufficiently alleged the

elements of a cause of action for intentional infliction of emotional distress and given Defendant fair notice of the grounds upon which this claim rests. See Bell Atlantic, 127 S.Ct. at 1964; K.G., 918 S.W.2d at 799. The court further finds that Defendant's Motion to Dismiss in this regard should be denied.

**D.      Count IV, Intentional Failure to Supervise Clergy:**

Plaintiff alleges in Count IV intentional failure to supervise clergy, including Captain Mitchell. As stated above, in Count II alleging negligence, among other things, Plaintiff alleges failure to supervise clergy. Plaintiff also makes a separate allegation in Count IV of intentional failure to supervise clergy. To the extent Defendant argues that a cause of action for the failure to supervise does not exist in Missouri, Defendant does not distinguish between the allegations of Counts II and IV. The court will assume, therefore, that Defendant asserts that Plaintiff has failed to state a cause of action in Count IV.

As stated above in regard to Count II, Missouri recognizes a cause of action of negligent supervision. See Davis, 200 S.W.3d at 165-66. Further, the Missouri court in Weaver v. African Methodist Episcopal Church, Inc., 54 S.W.3d 575, 581 (Mo. Ct. App. 2001), specifically recognized the tort of intentional failure to supervise clergy and held:

> A cause of action of intentional failure to supervise clergy has the following constituent elements: (1) a supervisor (or supervisors) exists; (2) the supervisor (or supervisors) knew that harm was certain or substantially certain to result; (3) the supervisor (or supervisors) disregarded this known risk; (4) the supervisor's inaction caused damage, and (5) the other requirements of the Restatement (Second) of Torts, Section 317 are met.[7]

_____

[7]      The court in Weaver, 54 S.W.3d at 583, noted that "a church was held liable for sexual assault under § 317 [of the Restatement] where the priest arguably gained access to the teen-age parishioner's hotel room for the purpose of providing counseling" in Hutchison v. Luddy, 742 A.2d 1052 (1999). Because the priest gained access to the teenager's room as a result of his

The court in <u>Weaver</u> noted that the applicable elements of the § 317(a) of the Restatement are that "the servant (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or (ii) is using a chattel of the master." <u>Id.</u> at n.10.

Thus, to the extent Defendant argues that a cause of action for intentional failure to supervise clergy does not exist in Missouri this argument must fail. Additionally, Plaintiff has alleged the elements of such causes of action as she alleges that Defendant *gave* Captain Mitchell *control of and responsibility* over children to whom Defendant had a duty; that Defendant was *aware of previous sexual misconduct by its clergy and officers*, including Captain Mitchell; that Defendant *knew that future harm was certain or substantially certain to result* without proper supervision; that Defendant *knowingly permitted* Captain Mitchell to exercise authority on its behalf; that Captain Mitchell used this authority to gain access to Plaintiff; that Defendant had the right to control and supervise Captain Mitchell; that Defendant *should have known* of Captain Mitchell's dangerous and exploitive propensities and/or that he was an unfit agent; and that Defendant *failed to provide reasonable supervision* of Captain Mitchell. Plaintiff in the matter under consideration has, therefore, sufficiently plead the elements of a cause of action for intentional failure to supervise clergy and given Defendant fair notice of the grounds upon which these claim rest. <u>See</u> <u>Bell Atlantic</u>, 127 S.Ct. at 1964; <u>Davis</u>, 200 S.W.3d at 165-66; <u>Weaver</u>, 54 S.W.3d at 581; <u>Smith</u>, 632 S.W.2d at 521-22. The court further finds that Defendant's Motion to Dismiss is this regard should be denied.

## E.     Breach of Fiduciary Duty, Count V:

---

position with the church, the church could be held liable. Under such circumstances it was not necessary that the abuse took place on the church's property. <u>Id.</u>

Defendant contends that Plaintiff's claim for breach of fiduciary duty should be dismissed because this claim is barred by the First Amendment and because upon alleging breach of fiduciary duty in Count V Plaintiff merely recharacterizes her other claims. Further, Defendant alleges that Plaintiff has failed to state a cause of action for breach of fiduciary duty.

**1.      The First Amendment:**

As discussed in detail above, claims may be barred by the Free Exercise Clause of the First Amendment if they impose a burden on religious conduct or on a religious practice and even if they impose such a burden, claims are not barred where the conduct of which a plaintiff complains involves an area which the State is free to regulate. <u>Smith</u>, 494 U.S. at 878. The court finds, therefore, for the reasons addressed above, that Plaintiff's cause of action for breach of fiduciary duty is not barred by the Free Exercise Clause of the First Amendment.

The court has set forth above the three-part test applicable to a determination of whether the Establishment Clause of the First Amendment is violated. <u>See</u> <u>Lemon</u>, 403 U.S. at 612-13. The purpose of Missouri law applicable to breach of fiduciary duty is secular in nature; Plaintiff's cause of action for breach of fiduciary duty neither advances nor inhibits religion as Plaintiff seeks to enforce "neutral principles of law"; and no ongoing monitoring of Defendant would be required as a result of Plaintiff prevailing in regard to her claim for breach of fiduciary duty. <u>See</u> <u>id.</u> Under such circumstances Defendant has not demonstrated that Plaintiff's claim for intentional breach of fiduciary duty involves excessive entanglement with religion. <u>See</u> <u>id.</u> The court finds, therefore, that Plaintiff's claim for breach of fiduciary duty is not barred by the Establishment Clause of the First Amendment. The court further finds that to the extent that Defendant contends that Plaintiff's claim in Count V for breach of fiduciary duty is barred by the First Amendment, Defendant's Motion to

Dismiss should be denied.

## 2. Elements of A Cause of Action for Breach of Fiduciary Duty:

Under Missouri law the elements of a breach of fiduciary duty include:

> (1) as between the parties, one must be subservient to the dominant mind and will of the other as a result of age, state of health, illiteracy, mental disability, or ignorance; (2) things of value ... which are the property of the subservient person must be possessed or managed by the dominant party; (3) there must be a surrender of independence by the subservient party to the dominant party; (4) there must be an automatic or habitual manipulation of the actions of the subservient party by the dominant party; and (5) there must be a showing that the subservient party places a trust and confidence in the dominant party.

Gilbreath v. First State Bank of Joplin, 859 S.W.2d 237, 238-39 (Mo. Ct. App. 1993).

Plaintiff alleges that Defendant and Captain Mitchell acted *intentionally* when they engaged in the conduct of which Plaintiff complains; that Plaintiff *trusted Captain Mitchell* because of his position with Defendant; that Captain Mitchell used his position with Defendant to engage in the conduct of which Plaintiff complains; and that Captain Mitchell *took advantage* of Plaintiff's situation as a minor who trusted him. Additionally, in regard to her claim for a breach of fiduciary duty Plaintiff alleges that she was in a *subservient position* to Defendant and Captain Mitchell; that she had a *special relationship* with Captain Mitchell and Defendant by virtue of their roles as pastors, spiritual advisors, and advisors; that these *relationships were confidential* as a matter of law; that Defendant had duties to Plaintiff as a result of these confidential relationships; and that, by the conduct otherwise described in the Amended Complaint as set forth above, Defendant breached its fiduciary duty to Plaintiff. The court finds, therefore, that Plaintiff has sufficiently alleged the elements of a cause of action for breach of fiduciary duty in Count V and given Defendant fair notice of the grounds upon which this claim rests. See Bell Atlantic, 127 S.Ct. at 1964; Gilbreath, 859 S.W.2d at 238-39. The

court further finds that Defendant's Motion to Dismiss should be denied in this regard.[8]

## CONCLUSION

For the reasons articulated above, the court finds that Plaintiff's cause of action is not barred by the First Amendment; that a cause of action for negligent failure to supervise and/or intentional failure to supervise clergy exist in Missouri; that Plaintiff has sufficiently alleged causes of action for child sexual abuse, negligent failure to supervise clergy, intentional infliction of emotional distress, intentional failure to supervise clergy, and breach of fiduciary duty; and that, therefore, Defendant's Motion to Dismiss should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss is **DENIED**. Doc. 19

---

[8]  In support of its position that a cause of action for breach of fiduciary duty based on sexual abuse does not exist in Missouri, Defendant cites H.R.B. v. J.L.G, 913 S.W.2d 92 (Mo. Ct. App. 1995), a matter involving alleged child sexual abuse. The Missouri court in H.R.B. based its decision on its interpretation of the First Amendment and found that First Amendment controlled and precluded the court's intervention; the court held that a cause of action for breach of fiduciary duty would require inquiry into religious aspects of the duty owed by a priest to parishioners. While state law controls in this matter in regard to interpretation of state law, this court must apply federal law to constitutional issues, as discussed above. See Kampa v. White Consol. Indus., Inc., 115 F.3d 585, 587 (8th Cir. 1997). Therefore, the Missouri court's interpretation of the First Amendment in H.R.B. is not controlling. This court has also discussed above the circumstances under which the First Amendment does not bar a claim for fiduciary duty where a religious organization is involved. Moreover, federal law provides that "[t]he First Amendment does not prevent courts from deciding secular civil disputes involving religious institutions when and for the reason that they require reference to religious matters." Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 196 F.3d 409, 431 (2nd. Cir. 1999). See also Hartwig v. Albertus Magnus College, 93 F.Supp.2d 200 (D. Conn. 2000) ("If, however, resolution of the [] dispute does not require the Court to address questions concerning the validity or plausibility of religious beliefs or choose between competing views of religious doctrine, improper government entanglement does not occur because the decision that is ultimately reached implies nothing about the validity or plausibility of religious doctrine.") (citing Geary v. Visitation of the Blessed Virgin Mary Parish School, 7 F.3d 324, 327 (3d. Cir.1993); Scharon v. St. Luke's Episcopal Presbyterian Hosp., 929 F.2d 360, 363 (8th Cir.1991); Minker v. Baltimore Annual Conference of United Methodist Church, 894 F.2d 1354, 1356-57 (D.C.Cir.1990)).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this <u>20th</u> day of September, 2007.